Good morning, and may it please the court. I am Anthony Long, and I represent Burt Douglas Montgomery. This court has previously affirmed Montgomery's conviction for fraud and money laundering. It also affirmed the separate grouping of the fraud conviction of the fraud and money laundering offenses for sentencing purposes. However, the court did not rule on the other sentencing issues raised by Montgomery on the previous appeal. Instead, the court ordered a limited remand pursuant to Ameline. Ameline's limited remand process obligates a district court to obtain the views of counsel prior to deciding whether to reconsider the sentence imposed. Obtaining the views of counsel constitutes a minimal level of due process protection with respect to the limited remand process. Montgomery was deprived of this minimal due process protection. In Ameline, we use the word should, not must. What do you think about that? Well, the practice that should, I would suggest, is not a permissive term. Should sort of, I would say, indicates more of a mandatory requirement than a permissive term, because if it really was to be permissive, it would say the court may consider. But the court didn't use the word may. The court used the word should, which we contend is more of a mandatory requirement. Because otherwise, that would mean that obtaining the views of counsel is not a requirement. It's at the discretion of a court. A court can or a court can't do it. It just depends. However, we submit that the district courts in the second circuit from which this requirement comes from, all view this as being a mandatory requirement. Because they tend to, they will seek the views of counsel prior to deciding the remand issue. And also, we submitted a 28-J letter showing that district courts within this circuit also view this as being a requirement of Ameline, in that they seek the views of counsel. So we would indicate that this suggests that even district courts view, or the majority of district courts view this as being a mandatory requirement, as opposed to merely permissive or discretionary. What the Ameline stands for, however, is that would the district court have done something different? And the district court said, no, I wouldn't do anything different. This fellow defrauded millions of people, lost much dollars. No matter what, I'm not going to change my mind. Well, then, one of the aspects of it, too, is that, with respect to the remand, is that if we'd have the opportunity to have been heard on this remand, then we would have pointed out that some of the, like, for instance, some of the enhancements that the court relied upon in determining the appropriate sentencing guideline range were in error. For instance, we reported out to the court, you shifted the burden of proof to Montgomery to disprove certain of the factual basis for the enhancements, as opposed to requiring the government to prove the existence of a factual basis for the enhancements. Also, if I would have been able to be heard on remand, Montgomery could have asserted. Well, because these enhancements greatly increased the sentencing range from a level 6 or level 8, which was a base level, up to a level 38, then some, if not all, of these sentencing enhancements should have been or may have been necessary to be established by clear and convincing evidence instead of the preponderance of the evidence. Moreover, we would have shown that with respect to the four-level enhancements, we would argue that the four-level enhancements were jeopardizing the safety and soundness of the financial institution, that the Bank of Saipan was not a safe, sound financial institution. We could have submitted facts to show that. It was never a prudent lending financial organization. So these were the factors that would have been brought out on limited remand because in looking at whether to reconsider, one of the factors is the court must consider the applicable guideline range and to the extent that there was error in determining what the guideline range was, what the applicable guideline range, that would be a basis for the court reconsidering what the sentence would be. I have a comment on the finding of obstruction of justice. What was the evidence for that? Well, the evidence, well, there was really no evidence. Montgomery objected to the obstruction of justice, and basically the government just argued what was in the pre-sentence report. And what the court said is that Montgomery, I believe, did not disprove the existence of obstruction of justice. But also, even more crucial, there was no finding that the false statements are in any way actually hindered any investigation. There was no finding on that point. It was just that, well, he gave false statements concerning material matters with respect to this case, and that's totally insufficient. So therefore, that basis would have been, would have shown that the guideline level would have been lower. And I think it is now the rule, the law of the circuit, is that with respect to determining sentencing, it first must determine whether the applicable guideline range was reached. And then if that is done, then the court looks to see whether the sentence itself was reasonable. But here we contend the applicable guideline range that the court determined of 38 was error. It was not right. And this is a fact that would have been brought out if we'd allowed to have been heard on limited remand. I have some concern that some of these sentencing arguments were either waived or forfeited in the prior appeal. In other words, in the prior appeal, was there any argument made that the disproportion in the enhancements required a clear and convincing? Well, our knowledge of that was not raised in the prior appeal. However, the court did not address or rule on any of our arguments on the sentencing enhancements on the prior appeal. Well, from reading its disposition, it seems to me it rejected Blakely-type arguments, basically, Sixth Amendment arguments. Because when they give an amyline remand, it's a very limited remand. It doesn't really reopen a lot of the sentence unless the judge on the limited remand decides to enter a resentencing. That's correct. So I'm just wondering if some of these sentencing arguments are coming up too late. No, we would contend that they are not too late in the sense that what the court ordered or what the court did in the previous appeal was that it said that Montgomery, for the first time on appeal, raises, you know, challenges certain of the sentencing enhancements. And it then stated that it would remand the matter pursuant to amyline. It didn't say we reject these sentencing enhancements or we reject these arguments or that we accept these arguments. Instead, our position is that by remanding the matter a limited remand, it left open the door for Montgomery to make these points or to make these presentations to the district court in order to assert that resentencing would be appropriate in this case. And that's what we were denied or deprived of because if the court, for instance, specifically stated that the court properly separated in the groupings the fraud and sentencing counts, that's the only ruling it made with respect to all of the sentencing issues and then that left open the door. And by not being able to be heard on limited remand, it precluded us from pointing these aspects out to the court that, for one, the guideline level that it imposed was not appropriate. Also, we would like to sum up briefly that the sentence itself, the 20-year sentence itself imposed is unreasonable because when you look at the judge's order on limited remand, the 20-year sentence, the basis for it is the fraud. What the disposition said was defendant Montgomery raises for the first time in an appeal sixth amendment challenges to judicial fact-finding used to enhance the sentence on the basis of monetary value, leadership role, sophisticated means, and obstruction of justice. Sixth amendment challenge, I would, and then I agree, it doesn't, it just talks about a limited remand, it doesn't really answer that question. But unless there's an implied rejection in the fact that it was raised for the first time on appeal, but a sixth amendment challenge, I would think, would be a challenge saying, well, the judge found facts when the facts really should have been found by a jury. And after Booker, that argument loses. It doesn't seem to me that those challenges would have been challenges to the level of review, the clear and convincing standard of proof. But, but also, would you, also would you consider of the appeal and within the appeal itself, Montgomery also challenged the enhancement facts, for instance, the burden shifting, all of those matters were also challenged in the previous appeal, and there was no ruling on it. So to that extent, the door is open, it's not foreclosed. And again, we insist that, we contend that the limited remand is what would give Montgomery the opportunity to be heard. And briefly, the sentence itself is unreasonable because it was based purely on fraud, and the maximum statutory penalty for fraud is five years, and all of the fraud counts ran consecutively. There was no mention at all of money laundering as the basis for the 20-year sentence. And the money laundering charge, or the money laundering conviction, is provided, is what the basis was, allows for a 20-year sentence. So we contend that the sentence itself. How much money did the depositors lose on account of the activities that were planned? Your Honor, to my knowledge, the depositors, I'm not sure there was no finding the depositors lost any money. And to that extent, Your Honor, my client didn't profit any money. My client didn't end up with any money. He didn't even end up with the bank stock. And all that would happen is that the bank went into, the government took the bank into receivership, but there's no showing that depositors lost any money. There was one argument that one person, Michelle Hom, lost, I think, $450,000. That's the only depositor that said suffered any harm as a result of the conduct involved in this case. The accounts were insured? No, the accounts were not insured. No account was insured? No account was insured. However, the bank went into receivership, and there's no saying that depositors lost money at all. It was just what happened is essentially that, I think, a run began happening, being made on the bank, and the bank did not have all of the available assets to pay out at the time people were withdrawing sums of money, so the government took it into receivership. But there is absolutely no showing, other than the $450,000 from Michelle Hom, of a depositor losing any money with respect to this circumstance, none whatsoever. Notice what they talk about in the precedence report is that harm to the bank, and that the bank may have lost money, but there's no indication of any depositor other than one person losing money to this case. And again, we point out that Montgomery ended up with no money and no stock. So to that extent, we say that the 20-year sentence is totally unreasonable, and it also shows that this couldn't have been a sophisticated scheme, in that if it's sophisticated, how does he end up with nothing at the end? And if the court has no further questions, I'd like to save at least, I know I've extended my time, I'd like to have at least a brief. Go ahead, Luke, ask your questions. Thank you. Thank you. Good morning, Your Honors. Timothy Moran, of the United States. Your Honor, I believe in answer to your last question, that the loss amount was approximately $5.5 million for the fraud. And whose loss was that? Well, I believe that was the total cost to the bank, although within So the bank was the big loser? Well, with a non-FDIC insured bank, the ultimate loser are all the depositors, because they never got their money back. And it's interesting to note that that loss amount is not on appeal here. Actually, I would argue that none of the guideline calculations are probably before this court, but even the appellant has not even raised that. The money laundering loss, which was a separate set of charges, it was $2.7 million. Well, let me understand this. When the government takes over as receiver, they continue to run the bank, or did they close it down completely? It's still being run. So that the depositors' accounts essentially are honored. Is that not correct? Your Honor, I don't actually know. It's on the receiver on the CNMI government. And I don't know what So it's not accurate from your knowledge, or mine either, that in fact a particular depositor lost money? I don't know how much any particular depositor lost. I do know that the amount of loss attributed to the fraud was $5.5 million. And that's not under any controversy. That was admitted at the sentencing hearing. The only question between you and me is whose loss? The bank's, Your Honor, as far as I know. You represent the government in the trial? No, Your Honor, I did not. The AUSA who handled the trial has since left my office and picked up the case. It is a voluminous record, although I'm prepared to answer to the best of my ability any questions. I do want to note that it may have been the better practice for the trial court to have requested submissions from counsel. And it is true that the trial court did not. But as Your Honor noted, it's not a rule of this circuit that the ambulance court did not say shall or must. But it did say should, and then it said written submissions would be adequate. Yes, Your Honor. When you read those two things together, is it not mandatory that in some way counsel be allowed to be heard? I don't believe it's mandatory because had they wanted to make it a rule, they could have simply by being more precise in saying shall or must. And in addition, while the Second Circuit, it may seem to be the practice there, this is not the Second Circuit, and this court determines its own rules. Furthermore, in the Cantrell decision, this circuit split with the Second Circuit on some of the Booker procedures to be followed. So it's certainly not the case that the Ninth Circuit has ceded to the Second Circuit its decision-making authority. And the fact that some district courts are doing it would be in keeping with what Ameline said. But to those courts, the question often is, does the defendant even want to be resentenced? Clearly, that's not the issue here because the judge was not going to resent anyway. And that's the most important point here is that the issue on the Ameline remand is what was in the court's mind. Would the court have done anything different had it known that the guidelines were only advisory? And in answering that question of what was in the court's mind, really only the court can do that. No one can tell the court what it would have in its own mind. So the defendant is not harmed by the lack of an opportunity to submit its views and writings on that limited issue, the Ameline limited remand. Well, you know, the counsel would say things like, now that the guidelines are known to have been advisory, sort of looking backward, here are the reasons why you ought to disregard the guidelines' advice. And it seems to me that when Ameline says that the court should get the views of counsel, that's the kind of thing they're thinking about. That's true, Your Honor. That is the argument that the defendant would have to make, but ultimately what the Ameline remand is for, is for the judge to decide had it known that they were, as you said, looking backwards to look forward, had it known that they were advisory at the time, would it have done anything differently? And the court was trying to say what was in its mind at that time. This is not, and the court made it abundantly clear. You know, you can be, you're trying to reconstruct something that didn't exist. In other words, there was nothing in the court's mind at that time about advisory guidelines, because the court didn't know the guidelines were advisory. So you're in a process of reconstructing what's really a hypothetical construct. And counsel probably has a role in arguing what kind of construct to make when you're suddenly reconstructing a sentence under advisory guidelines instead of mandatory ones. I agree with you, the court shouldn't use should. It's just, you know, it's not good judge talk. It must and shall be better. But what we really have to do here is to think, is this a requirement that ought to be there? And if it ought to, we can construe the should as must, and maybe write an opinion saying that's what it means. I agree with you on that. It would have been better had the court solicited the views in writing. It would have at least obviated this issue. But the court did not, and as Your Honor alluded to, the issue really facing this court is whether that rule should be construed as binding in the absence of a better indication that it was. It could also argue harms. My next point is that even if the views were solicited, this court made it abundantly clear that it would have issued the same sentence. If you note that one of the points made by the appellant is that the decision came out almost immediately. I think it took a matter of days. The court was well aware of this case, of all the issues in it, and had no hesitation whatsoever in saying that this is the sentence I issued, and this is the sentence that I want to stick with. So really there is no harm here in that the defendant did not have an opportunity to... Well, you know, maybe there's harm to the system, huh? What's there to lose to hear what the attorney's got to say? It might be helpful. Your Honor, it might be helpful. In this case it appears that it would not have been. Well, we're not just looking at one particular case. We've got to look at the law in general. But all he had to do was just take a few minutes, and then you wouldn't have had your day here in Honolulu, you know? You probably wouldn't be here. Well, in controlling the harm to the system, Your Honor, again, I would concede that it may have been a better practice to have done that, but the court did not. That's the situation we're faced with. The whole business of this is harmless and that's harmless, that's the last refuge of something. So I think it's overall been bad for our system of justice, because we do a lot of things we should do, and we say, well, you know, what? You know, guilty anyway, so... On a different subject, did the last remand leave open the opportunity to point out the various ways in which opposing counsel thinks that the guidelines were erroneously used? Thank you, Your Honor. I'd like to address that. I notice that I'm almost out of time, but if I may address your question, it may take... You can always answer the judge's question. Thank you. And it may take me a minute or two, because I do believe that the guideline arguments are not before the court. They were not the... In the prior appeal, the issue was simply a Blakeley issue as to who should have been the proper decider of the facts. That was what was raised to the prior court. The court remanded simply to decide whether the trial court would have done things differently. So all these issues as to whether the guidelines were properly applied have not been preserved or not properly before this court. It's also the fact that below, at the sentencing hearing, the defendant acknowledged that the facts were what they were and was merely fighting at the sentencing level with application of the law to those facts. Then when it went up to appeal, it was solely that the court shouldn't have been the decider. So basically abandoning and not preserving any argument as to what the application should have been. So in this appeal, the appellant is skipping the original appeal and going right back to what happened at the trial court without having to preserve that in the first appeal. Furthermore, I think it's the law of the circuit now that in contrast to the second circuit, reasonableness does not include looking at what the guidelines are. It's a separate prior inquiry. Footnote 5 of the Cantrell decision says that the second circuit notes that reasonableness is one factor, sorry, that analyzing the guidelines is one factor in the course of reviewing reasonableness of the sentence as a whole. However, the law in this circuit is that you first determine what the guidelines are and then as a separate second inquiry, you determine reasonableness. So when this case went back in limited remand to review for reasonableness, it was only looking at the sentence as a whole, not analyzing piecemeal the guidelines. And finally, I would argue that the prior court in its remand basically disposed of any issues as to the application of the guidelines, the particular construction, because for one example, we know that the prior panel already said that the two-level enhancement for grouping is proper. That enhancement only makes sense if the money laundering group and the fraud group are within four levels, because it's a two-level enhancement that the prior panel approved. Wire fraud is six levels plus the 18 levels for the loss, which was not under appeal at any point. And money laundering is eight levels plus 18 levels for the amount of loss. Now, the 18-level amount of loss is raised in this appeal and was raised in the prior appeal. When the prior panel said that the two-level enhancement for separate groups is appropriate, it must have had in mind that the 18 levels for money laundering was also appropriate. Otherwise, the fraud count would be 24 levels and the money laundering count would be eight levels, and there would be no issue of the grouping, because even if they were separate counts, they would be too far apart to have any effect on the actual guidelines level. So for this court to entertain any arguments as to whether the money laundering amount or obstruction or anything else is appropriate would effectively overrule the prior panel. Well, I guess the issue is more if we were to determine that counsel must be given an opportunity for a say in the matter, can those issues be raised by counsel when it goes back down? I guess that's the issue. They should not be, Your Honor, because... Okay, I think we've heard your reasons. Well, I wanted to add one thing, that in the Manyweather case, in the revised decision, the court said that it would instruct the trial court to reconsider the guidelines range when it made the limited remand. In this case, it was a straight limited remand, strictly to consider, just a limited remand for Ameline. It didn't say to consider a new guidelines amount. So I would say that that has been settled by the last panel. In the Ameline remand, we still get the question of reasonableness as a separate issue, as you said. Presumably, the district court arrives at a reasonable sentence considering the statutory factors. Yes, Your Honor. Is there anything in the record here that will convince us that the court did consider the statutory factors? On the... Your Honor, it's not clear whether the court had to consider the statutory factors in the first sentencing or in the second sentencing. So it's a little bit ambiguous, but I would submit that the court considered the factors at both the original hearing, which covers 75 pages of transcript. It's clear that all the factors were considered there. And the court considered the factors on the remand because it's not required that the court mechanically go through all the 3553A factors and list them one by one. Your Honor, it did. The court noted the effect on the community. The court noted the cold, calculated nature of the crime. What about the age of the defendant? The court did not note the age of the defendant on the limited remand. The court had considered that. The argument was raised to the court on the first sentencing hearing, and the court did consider it. He denied a downward departure on that ground. So it was considered by the court. And the court noted that it had reviewed the court file, the pre-sentence report, and the sentence imposed. It does not specifically mention that, but it does say that it was familiar with the entire file, especially the pre-sentence report and the sentence. How about the obstruction of justice matter? Your Honor, the obstruction of justice is appropriate on two grounds. One, that the defendant perjured himself at the trial repeatedly, and because he obstructed justice. Doesn't the court have to make a finding that the false statement actually impeded the official investigation? Your Honor is correct. The false statement must make that finding. For the perjury... Was that done? Was any such finding made that the investigation was impeded? Your Honor, it was argued to the court that the defendant had lied several times to the FBI agent. There was no finding in the PSR on the obstruction of justice. There was no finding that it hindered an investigation. There was a finding at the sentencing hearing in the context of both obstructions that there was materiality, that the lies were material, and that's at page 117 or 112 of the second volume of the excerpt of record. And I would submit that that... But the court didn't specifically make such a finding. Not specifically make such a finding with regard to the obstruction of an investigation, Your Honor. That's correct. But I would submit that that point, as I've already argued, is not preserved for appeal and should not deter this court from approving this sentence. Unless the court has any further questions, I believe I've already exceeded my time. Thank you. Contrary to the assertion, the previous panel did not approve the two-level enhancement for the grouping. What the court specifically ruled, the previous panel ruled on page three of its decision was the district court correctly applied the sentencing guidelines to Montgomery's conviction when it did not group the money laundering and wire fraud counts because the funds used in the money laundering were not derived from the underlying wire fraud offense. All they did was approve the separate grouping. It didn't approve the two-level enhancement. So that leaves open as to whether the propriety or the appropriateness of the two-level enhancement. Montgomery challenged a lot of these sentencing enhancements on his previous appeal. They were not ruled on. It was an unlimited remand. He was not heard on that at all. And now he's now back before this court and he still has not had any address of his arguments on the sentencing enhancements that he contends were inappropriate. And also with respect to reasonableness this judge can be mentioned is that you consider all of the factors and one of the factors is the appropriate sentencing guideline level. And we contend that the appropriate sentencing guideline level was not 38 as determined by the court. It was a lower level. This Montgomery has the right to be heard, he should be. So in the future even though we have Booker we can still have appeals that would argue that the judge in determining the appropriate sentencing guideline level levels in making that determination didn't consider all the necessary factors. So we can still go into all that again. That's correct because even though the guidelines were advisory, the touchstone, the starting place for determining whether a sentence, before you get to reasonableness of the sentence, is whether the appropriate guideline level was reached. Because that you know, the touchstone Well I didn't say touchstone, it just says that the court needs to indicate that it's considered the guidelines. That's correct. Okay, consider the guidelines and then with the guidelines in mind, make the appropriate what it considers to be the appropriate sentence. But what you're doing is you're going back to the system before Booker where all this stuff's appealed. As I understand the law, maybe it's from Contrell and the other circuit cases here is that the court still requires a district court to determine the applicable guideline level. And that has to be reviewed and determined before you get to the reasonableness of the sentence. And then that issue can go up on appeal. Yes. Yes, I think that is correct. Then it can go down again and then other issues on the guideline levels can be raised and come back up. Conceivably, that's possible, Your Honor. Yes, conceivably that is possible. Go back down again and some other Well, when it goes back down, I assume the court would give certain instructions or guidelines or guidance for the district court to consider. But, for instance, in the Meewell case, it had been down two or three times. But to the extent that an appropriate guideline range has to be determined, that is still a requirement that the courts have to do to get to the reasonableness of the sentence. Is there a case that still holds? I think, Your Honor, before Booker comes into play, the court must determine the appropriate guideline range. If I'm not mistaken, Your Honor, I believe the recent case of Minnieweather, if I'm not mistaken, Your Honor, which was decided I think is on which was decided on May 9 if I'm not mistaken where it goes into What's the name of that case? Minnieweather. Minnieweather. Where it says on page Let me get the correct page of the slide. I have page 6 where it says Thus, if the sentence imposed resulted from an incorrect application of the sentencing guidelines and the error was not harmless ordinarily we will remand to the district court for further sentencing proceedings permitting the district court on remand to consider the proper sentencing guideline along with other sentencing factors. That's what the court said in Minnieweather. So if the appropriate guideline factor is one of the section 3553 factors that the court has to determine before you get to the reasonableness of the sentence. Because in Minnieweather the court, I don't think I think it was Cantrell where there was not an issue of whether they wanted limited remand and so therefore it was limited solely of the reasonableness of the sentence which was not an issue I think in Cantrell which is 4335 second 5th or 1269 and the court there just looked at whether the appropriate guideline range was determined by the court and whether it was appropriate for the downward departure taken by the court and all these were post-Booker cases. So yes there still has to be an appropriate guideline range determination made before you get to review the reasonableness of the sentence. Whereas the second circuit is a little different in that it views the guideline range as a part of the reasonableness determination. So we believe that on this case Montgomery's never had an opportunity for any court to review his arguments concerning the impropriety of the guideline range that was used in this case. And also he has not had the propriety to have the 20 year sentence reviewed on appeal. We think the 20 year even if this court concludes that the guideline range is immaterial or that the guideline range was appropriate, the 20 year sentence is simply unreasonable in light of the facts and circumstances of his case. Given that the reason for it is based simply on fraud and the maximum statutory penalty for fraud was 5 years. If there are no further questions thank you very much.
judges: B. Fletcher, Pregerson, Canby